

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 30 2011

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KENNETH KIRSCH,                  §
                                 §
            Petitioner,          §
                                 §
v.                               §     No. 4:10-CV-721-A
                                 §     (Consolidated with
RICK THALER, Director,           §     4:10-CV-722-A and
Texas Department of Criminal     §     4:10-CV-723-A)
Justice, Correctional            §
Institutions Division,           §
                                 §
            Respondent.          §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Kenneth Kirsch, a state prisoner currently incarcerated in Abilene, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent.[1]  After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

------

[1] Petitioner filed three petitions that were virtually identical, a separate one as to each of the three counts of conviction.  The three petitions were consolidated for handling by this court and were given the case number shown in the caption.

## I.  Factual and Procedural History

In January 2004 petitioner was charged in a multi-count indictment with aggravated sexual assault of a child under 14 years of age and indecency with a child by contact and exposure in cause number 0912810D in Tarrant County, Texas.  (State Habeas R. at 150-51) On November 29, 2005, petitioner's trial commenced. Following the guilt/innocence phase, the jury found petitioner guilty of one count of aggravated sexual assault of a child under 14 years of age, one count of indecency with a child by contact, and one count of indecency with a child by exposure.  Petitioner pled true to the repeat offender notice in the indictment, and the trial court assessed his punishment at 45- and two 30-year sentences, respectively, to be served concurrently.  (*Id.* at 152-53)  The state appellate court affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.  *Kirsch v. State*, No. 2-06-031-CR, slip op., 2007 WL 704905 (Tex. App.–Fort Worth Mar. 8, 2007); *Kirsch v. State*, PDR No. 514-07.  Petitioner also filed a postconviction state habeas application, which was denied by the Texas Court of Criminal Appeals on the findings of the trial court.  *Ex parte Kirsch*, State Habeas App. No. WR-59,164-02, at cover.  This federal petition followed.

The state appellate court summarized the evidence at trial as follows:

> Michael and Christy, who were never married, are the parents of A .L. A.L. was born on July 5, 1997. In 2000, Christy married Kirsch. In January 2003, Michael - A.L.'s father - drove from Nebraska to pick up A.L. because Christy was in the hospital. During the drive back to Nebraska, A.L. talked about Kirsch and referred to him as "Bubba." Michael referred to the fact that Bubba was gone, and A.L. said, "I hope he stays there until his skin falls off his bones." After some encouragement, A.L. told her dad that she had walked by a room and had seen Kirsch masturbating. A.L. described other incidents, including that Kirsch forced her to watch porn movies; that he put Jello on her crotch area; that he got on top of her and made "motions on her body"; that he put tape on her hands and feet, put two ice cubes in her mouth, put duct tape on her mouth, put her in the bathtub after her clothes were off, and urinated on her; that he put his penis in her mouth and went to the bathroom in her mouth; and that he would make her do some of the activities depicted in the porn videos. Michael pulled over and called the police and his wife. The next day, he gave a written statement at the Omaha Child's Protection Unit.

(State Habeas R. at 155-56)

## II. Issues

Petitioner raises the following grounds for relief:

(1)  His trial counsel rendered ineffective assistance (grounds one through six);

(2)  His due process rights were violated by the state's use of extraneous offenses during the guilt/innocence phase of trial (ground seven);

3

(3) His Fifth and Fourteenth Amendment rights were violated when the complaining witness failed to identify him as the person who molested her (ground eight); and

(4) He was denied his Sixth and Fourteenth Amendment right to a trial by a fair and impartial jury (ground nine).

(Pet. 7-8A & Insert)

### III.  Rule 5 Statement

Respondent believes petitioner has sufficiently exhausted his state remedies on the claims presented as required by 28 U.S.C. § 2254(b).  (Resp't Answer at 4)  Nor does it appear the petition is barred by limitations or subject to the successive petition bar.

### IV.  Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state

court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## *(1)  Ineffective Assistance of Trial Counsel*

Petitioner claims his trial counsel, Leigh Ann Schenk and Mary Beth Scott, were ineffective by (1) failing to seek out, interview and subpoena the victim's mother who was named as an eyewitness, (2) failing to investigate and research the "vagaries" of sexual assault among young children, (3) failing to file a motion to obtain a defense expert witness to rebut the state's expert witness, (4) failing to object to the jury charge because it did not include a lesser included offense instruction,

(5) failing to sufficiently object and support the defense's motion in limine prohibiting state witnesses from testifying to prior extraneous offenses, and (6) eliciting extraneous offense testimony during cross-examination of the victim's father. (Pet. at 7-8A & Insert)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The state habeas judge, who also presided over applicant's trial, conducted a hearing by affidavit on petitioner's ineffective assistance claims and entered findings of fact refuting the claims, which were adopted by the Texas Court of Criminal Appeals. (State Habeas R. at 133-38) Applying the *Strickland* attorney-performance standard to those factual findings, the state habeas court concluded applicant had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts or omissions, the result of his trial or appeal would have been different. Applicant has failed to rebut the state court's factual findings by clear and convincing evidence, thus this court defers to those findings. 28 U.S.C. § 2254(e)(1).

Petitioner claims his trial counsel was ineffective by failing to seek out, interview, and subpoena Christy, the victim's mother. (Pet'r Mem. at 13-14) According to petitioner, had counsel called Christy, she could have testified that her daughter's "accounts and allegations" were false and untrue, that her daughter and petitioner had a good relationship, and that he never molested her daughter. (Pet'r Mem. at 14) In response to the allegation, counsel Schenk testified as follows:

[A]s I recall the location of the victim's mother was unknown to counsel as well as to the District Attorney's office. Had the victim's mother been located, it is unsure as to whether her testimony would have caused more harm to KENNETH P. KIRSCH. According to the facts in the trial, the mother would have been a witness to the abuse of the victim and if so, would have harmed KENNETH P. KIRSCH had she of [sic] testified to those facts. It is unknown what the mother's testimony would have been due to the fact that her location was unknown therefore the mother could not be interviewed by defense team nor the prosecutor's office.

(State Habeas R. at 124)

Counsel Scott testified as follows:

At all times during the representation of Mr. Kirsch, the question of whether or not this witness would benefit his case was raised to both Mr. Kirsch and his family. At the onset, the DA's office disclosed to us they had no idea where to find her, and the clerk's file did not reflect a successfully served subpoena. The father of the child had talked with CPS about locating her, too, but they did not disclose to us if they knew where she was. Mr. Kirsch could not give us any information about where she might be, who her friends were, where she was employed or what family she might have in this area. We were unsuccessful in locating her at that time.

(*Id.* at 127-28)

The state habeas court entered findings of fact consistent with counsel's testimony and concluded counsel's decision that the mother's testimony would not have benefitted petitioner's

9

defense was the result of reasonable trial strategy. (State Habeas R. at 134, 139) The state courts' adjudication of the claim is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.

Bald assertions by a petitioner are not enough to sustain a claim of ineffective assistance of counsel. *See Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001); *Green v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996). Furthermore, complaints of uncalled witnesses are not favored in federal habeas corpus review, because presentation of testimonial evidence is a matter of trial strategy and because of their highly speculative nature. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that testimony would have been favorable to a particular defense. Petitioner made no such showing in state court or this court.

Petitioner claims counsel was ineffective by failing to investigate and research the "vagaries" of sexual assault among young children and call an expert in the field to rebut the state's expert. (Pet'r Mem. at 15-17) According to petitioner,

counsel should have consulted an expert, conducted an investigation, and researched studies by qualified experts in the field that show "a good percent" of children lie about sexual abuse for attention or because they are pressured by a parent who is attempting to gain custody. Petitioner specifically asserts counsel should have consulted with and called as a witness Dr. William Carter, an expert in the study of child abuse, to testify that a child can be analyzed so frequently the child may come to believe what she has been told to say and that child witnesses are often anxious about appearing in court. (*Id.* at 19) In response to the allegation, counsel Schenk testified as follows:

> [T]his if [sic] a fabrication by KENNETH P. KIRSCH as I was a child abuse investigator and acted including testifying as a child abuse expert myself for over fifteen years. I have had countless hours of training and research including "publications" on the subject of child abuse including children lying about sexual abuse. I have personally testified on this subject as well as facilitating education classes on the topic.
>
> I am unsure who the state's expert would have been other than the doctor that performed a physical examination of the child and found no evidence of sexual abuse. I did hire an expert to review a videotaped interview of the child. I also paid for a plane ticket and subpoenaed said tape which was located in another state but at the last minute it was defense counsel's strategy that introducing the videotaped interview of the child into evidence would do more harm than good.

(State Habeas R. at 124-25)

11

Counsel Scott testified as follows:

Prior to becoming an attorney, Leigh Ann Schenk, whom the family hired, had been associated with Child Protective Services. One of her duties was to investigate claims of sexual abuse by children. Her experience with child sexual assault victims was one of the reasons the family hired her for this case. There was no indication that the child was making this up for attention, and as I remember, we all discussed the possibility that another man had perpetrated this crime against the victim. Trying to prove the child was lying was a trial strategy that was discussed and later abandoned.

At some point before trial, an expert named Debbie Moore was hired by Ms. Schenk for trial, but I do not remember just what her qualifications were, nor for what purpose she was hired.

(*Id.* at 128)

The state habeas court entered findings of fact consistent with counsel's testimony, and concluded petitioner had failed to demonstrate deficient representation or a reasonable probability that the result of his trial would have been different had counsel done more investigation or research or hired an expert. (*Id.* at 134-35, 140, 142) The court further concluded counsel's decision not to present the expert witness was the result of reasonable trial strategy. (*Id.* at 140) The state courts' adjudication of the claim is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.

"A conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). Counsel Schnek was knowledgeable on the topic of child sexual assault and hired and consulted with an expert. Counsel's decision not to call the expert as a witness out of fear that it would harm the defense more than benefit the defense was sound trial strategy. The presentation of testimonial evidence is a matter of trial strategy, and counsel's decisions in this regard are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles*, 129 S. Ct. at 1420; *Strickland,* 460 U.S. at 689.

Petitioner claims counsel was ineffective by failing to object to the jury charge "so as to require the charge to contain a lesser included offense instruction." Petitioner seems to argue that counsel should have objected to the charge and requested a lesser included offense instruction as to the count alleging the greater offense of aggravated sexual assault of a child under age 14. (Pet'r Mem. at 20-21) According to

petitioner, counsel's omission "allowed the jury to convict [him] on a charge which arose out of the same criminal act" and convict him on all three charges, instead of only one. (*Id.* at 21) In response to the allegation, counsel Schnek testified that the judge gave all the jury instructions allowed by law based on the facts of the case. (State Habeas R. at 125) Counsel Scott testified as follows:

> There was no lesser included offense that could have been considered in light of the testimony. The State charged Mr. Kirsch with eight (8) counts and proceeded on three (3) counts. They were unwilling to negotiate their position at any time and the jury found on three (3) counts.

(*Id.* at 128)

Consistent with counsel's testimony, the state habeas court entered the following factual findings:

> 24. Applicant presents no evidence, or facts, to support his claim that counsel should have requested a lesser included instruction on indecency with a child by contact or indecency with a child by exposure.

> 25. Applicant presents no evidence, or allegation, that there was some evidence that would permit a rational jury to find that Applicant was only guilty of indecency with a child by contact.

> 26. Applicant presents no evidence, or allegation, that there was some evidence that would permit a rational jury to find that Applicant was only guilty of indecency with a child by exposure.

27. Counsel did not request a lesser included offense instruction because they determined the evidence and the law did not support any.

(State Habeas R. at 135) (citations omitted)

Based on its findings, the state habeas court concluded petitioner had failed to prove that he was entitled to a lesser included offense as a matter of state law, and, thus, that counsel's performance was deficient by failing to request a lesser included offense instruction on indecency by contact or by exposure. (*Id.* at 140) The state courts' adjudication of the claim is not unreasonable or contrary to or involve an unreasonable application of *Strickland.*

Deferring to the state court's interpretation of its own law, petitioner was not entitled to a lesser included offense charge. Counsel is not ineffective for failing to request a lesser included offense instruction not supported by the evidence. *See Martinez v. Quarterman,* 270 Fed. Appx. 277, 295 (5th Cir. 2008) (finding that because the petitioner was not entitled to lesser included offense jury instruction, he failed to demonstrate his counsel was ineffective for failing to request such an instruction). *See also, United States v. Wise*, 221 F.3d 140, 147 (5th Cir. 2000) (recognizing that jury instructions, as a whole, should reflect "a correct statement of the law" and

clearly instruct jurors "as to the principles of the law applicable to the factual issues confronting them").

Petitioner claims counsel was ineffective by failing to properly object to extraneous offense testimony, in violation of a motion in limine, by A.L.'s father that petitioner pulled a gun on Christy and tore her shirt during a fight. (Pet'r Mem. at 21-22) After the testimony, defense counsel asked to approach the bench, and the jury was excused for a break. Counsel then moved for a mistrial, which was overruled. Counsel did not request a curative instruction. (RR, vol. 3, at 56-57) In response to the allegation, counsel Schnek testified that "after reviewing the transcript [she] found that counsel did in fact object to extraneous offense information/evidence." (State Habeas R. at 125) Counsel Scott did not recall the objection or remember the outcome of the conference at the bench, but stated that "an instruction [to disregard] may not have been the best strategy for Mr. Kirsch and that would have been discussed with him at the time of trial." (Id. at 128-29)

Consistent with counsel's testimony, the state habeas court entered the following findings on the issue:

> 29. Michael Leddy was admonished on the record prior to his testimony as follows:

Okay.  Then just to make it clear, do you
understand, Mr. Leddy that you can't make any
reference to the defendant being in jail or
to any bad acts that the defendant committed
other than what you daughter told you as far
as the sexual abuse towards her . . . So do
you understand, Mr. Leddy, that you can talk
about the threats he made to your daughter,
but not any threats he made to other people
or him being in jail . . . Or any drug use.

30.  Michael Leddy was admonished that he could not go
into the following testimony in front of the jury:

Because Christy had called me from the hotel
and she told me that Bubba [petitioner's
nickname] had – he was selling drugs; he had
pulled a gun on her, and tore her shirt off
in an argument of some sort.  And this was
different events that she was telling me
about.  And I just – you know, one thing
after another, and I just made the decision
to go get her.  I felt she was not in a safe
place.

31.  Michael Leddy was properly admonished that he was
not allowed to testify regarding the gun incident.

32.  When asked by the defense on cross-examination
"are you talking about sexual abuse to the
mother," Michael Leddy answered as follows:

No, not sexual abuse, I'm sorry.  *Just when*
*Christy Baccus told me about him pulling out*
*the gun and tearing her shirt and then and*
*her mother called and call 9-1-1*.

33.  Hon. Scott asserts that an instruction regarding
the extraneous offense evidence may not have been
the best strategy in this case.

34.  Counsel did object to the extraneous offense
evidence by asking for a mistrial.

(State Habeas R. at 135-36) (citations omitted) (emphasis added)

The state habeas court cited to the following state law relevant to the issue:

> [T]he request for an instruction that the jury disregard an objectionable occurrence is essential only when the [sic] such an instruction could have had the desired effect which is to enable the continuation of the trial by a [sic] impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal.

Relying on this law and its factual findings on the issue, the state habeas court concluded that counsel was not deficient by failing to request a curative instruction because counsel could have believed the admission of the evidence would not be cured by an instruction alone and warranted a mistrial, that counsel's decision not to request a curative instruction was the result of reasonable trial strategy, and that there was nothing to indicate the result of petitioner's trial would have been different had counsel moved for a curative instruction. (*Id.* at 141, 143) The state courts' adjudication of the claim is not unreasonable or contrary to or involve an unreasonable application of *Strickland*. Based on the evidence, it is unlikely

that the jury would have found petitioner not guilty had counsel requested a curative instruction; thus petitioner cannot demonstrate resulting prejudice.

Petitioner claims counsel was ineffective by soliciting the extraneous offense evidence during cross-examination of Leddy. (Pet'r Mem. at 22-24) In response, counsel Schnek explained that counsel did not ask for information regarding extraneous offenses, that the witnesses volunteered the information after being instructed not to, and that counsel immediately addressed the issue. (State Habeas R. at 126)

The state habeas court entered findings of fact consistent with counsel's testimony and concluded that counsel was not ineffective because a witness gave an answer that he was specifically told not to and that petitioner had failed to show a reasonable probability that the witness would not have violated the instructions had counsel asked different questions. (*Id.* at 136) The state courts' adjudication of the claim is not unreasonable or contrary to or involve an unreasonable application of *Strickland*. The record belies petitioner's claim that counsel solicited extraneous offense testimony from the witness.

*(2) Extraneous Offense Evidence*

Petitioner claims his right to due process was violated by the state's use of the extraneous offense evidence that he pulled a gun and tore Christy's shirt during a fight, because it had an injurious effect or influence on the verdict and was designed by the state to inflame the minds of the jury. (Pet'r Mem. at 25-26) Petitioner asserts the state should have instructed Leddy not to mention any prior bad acts. On this issue, the state habeas court entered the same factual findings as stated above in 29 through 32, *supra*, and found that the testimony was not evidence that the State "used" extraneous offense evidence. (State Habeas R. at 137)

Based on its findings, the state habeas court concluded petitioner's claim of wrongfully-admitted evidence was not cognizable on state habeas review and that petitioner failed to prove the state presented the evidence or that his due process rights were violated. (*Id.* at 144) The state courts' adjudication of the claim is not unreasonable or contrary to or involve an unreasonable application of federal law. Bald assertions on a critical issue in a petitioner's *pro se* petition, unsupported by the record, carry no probative value. *Ross*, 694

F.2d at 1011. The record belies petitioner's claim that the state used extraneous offense testimony. The state neither elicited the testimony nor mentioned it in closing argument in the guilt/innocence phase of petitioner's trial.

### (3) Identity

Petitioner claims his rights under the Fifth and Fourteenth Amendments were violated by the victim's failure to identify him at trial as the perpetrator of the crimes. (Pet'r Mem. at 27-28) The state appellate court addressed the issue in the context of a legal and factual sufficiency of the evidence claim as follows:

> Kirsch claims that the evidence failed to show that he was the person who committed the offenses. He contends that Christy had other boyfriends who lived with her and A.L. and that the perpetrator could have been one of these individuals.

> It is true that when A.L. testified at the trial in 2006, she stated that the man in the courtroom who had been identified as Kirsch did not "look very familiar at all" and explained that his face and his hair were different. However, when Christy's father testified, he explained that Kirsch looked different than he had looked in 1999 and 2000 because he had gained fifty or sixty pounds, his hair was darker, and he was older. Although one of the witnesses testified that Christy had been fondled by someone named Dayson, at no time during A.L.'s testimony did she waiver from her allegations that Kirsch, also known to her as "Bubba," was the person who had committed the acts against her.

> Giving due deference to the fact-finder's
> determinations, "particularly those determinations
> concerning the weight and credibility of the evidence,"
> we hold that the jury did not err by finding that
> Kirsch was the person who perpetrated the alleged acts
> upon A.L.

*Kirsch*, slip copy, at 7-8 (citations and footnotes omitted).

The state court's adjudication of the claim is not unreasonable or contrary to or involve an unreasonable application of federal law. The weight to be given to an in-court identification of a defendant is a question properly left for the jury. *See Manson v. Brathwaite*, 432 U.S. 98, 117 (1977) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."). Any discrepancies between petitioner's appearance at the time of the offenses and the time of trial go to the weight of the evidence on the issue. Furthermore, A.L. had an independent basis for identifying petitioner-petitioner was her stepfather, she had a close and on-going relationship with him, and she identified him as "Bubba," petitioner's nickname, which minimized any likelihood of misidentification. (RR, vol. 4, at 74, 79, 130)

*(4) Jury Bias*

Petitioner claims he was denied his constitutional right to a fair and impartial jury because of remarks made by various veniremembers in the hallway, which were overheard by defense counsel's legal assistant. (Pet'r Mem. at 29-31) The state habeas court entered the following findings of fact on the issue:

49. Melody Story, [defense counsel's paralegal], testified that she heard jurors discussing how Applicant looked guilty and indicating how they sympathized with the victim.

50. Ms. Story did not know who of the fifty-fifty possible jurors were the six ones she overheard but that they spoke amongst themselves.

51. When the twelve jurors chosen were seated, the Court discussed with them the following:

   I want to go over a few things with you before I swear you in. It's come to the Court's attention that there may have been some discussion in the hallway about this case. Did anyone hear any discussion about this case in the hallway? Did you over hear any conversations or statements made about anyone involved in this case in the hallway? And if anyone did, I would like you to just lift your hand, okay, and we'll get into that. So no one heard anything about this case in the hallway or about any allegations or anything like that?

52. No jurors on the jury panel raised their hand or
    advised the Court that they heard any of the
    conversations heard by Ms. Story.

53. The Court admonished as follows:

    One of the things we need to make sure is
    that we don't discuss the evidence in this
    case with fellow jurors until you're
    instructed to deliberate or with others, with
    your spouse, your significant other, your
    friends until you have been discharged from
    jury service. You are not permitted to read
    any newspaper articles, if any, or watch any
    television or radio reports if there were
    any.

54. There is no evidence that any of the juror members
    who heard Applicant's case were engaged with, or
    overheard, the conversations to which Ms. Story
    testified.

55. There is no evidence that the jury was biased
    against Applicant.

(State Habeas R. at 138) (citations omitted)

Based on its findings, the state court concluded petitioner

had failed to show that any particular juror's beliefs or

opinions "prevented or substantially impaired the performance of

his duties as a juror in accordance with his instruction and

oath." (*Id.* at 146) *See Sadler v. State*, 977 S.W.2d 140, 142

(Tex. Crim. App. 1998). The state court's adjudication of the

claim is not contrary to or involve an unreasonable application of federal law on the issue.

A court cannot consider a habeas petitioner's bald assertions on a critical issue to be of probative evidentiary value. *Ross*, 694 F.2d at 1011. Absent evidence in rebuttal, a court must defer to the state trial judge's on-the-spot assessment of credibility and demeanor of the jurors while questioning them on the matter. 28 U.S.C. § 2254(e)(1). Thus, assuming the trial judge found the jurors' silence as an indication that they had not made or heard the remarks, petitioner cannot demonstrate the remarks had a substantial and injurious effect or influence on the jury's verdict. *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007).

### *(5) Evidentiary Hearing*

Petitioner seeks an evidentiary hearing for purposes of further developing the record in support of his claims. *See* 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) provides:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>> (A) the claim relies on-
>>> (i) a new rule of constitutional law, made

retroactive to cases on collateral
review by the Supreme Court, that
was previously unavailable; or

(ii) a factual predicate that
could not have been previously
discovered through the exercise of
due diligence; and

(B) the facts underlying the claim
would be sufficient to establish by clear and
convincing evidence that but for
constitutional error, no reasonable
factfinder would have found the applicant
guilty of the underlying offense.

*Id.*

Applicant has not met the statutory criteria. The case can
be decided on the record, and the interests of justice do not
require a hearing. Further development of the record is not
necessary in order to assess the claims.

For the reasons discussed herein,

The court ORDERS the petitions of Kenneth Kirsch for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate
Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases
in the United States District Court, and 28 U.S.C. § 2253(c), for
the reasons discussed herein, the court further ORDERS that a

certificate of appealability be, and is hereby, denied, as applicant has not made a substantial showing of the denial of a constitutional right.

SIGNED March 30, 2011.

_____
JOHN McBRYDE
UNITED STATES DISTRICT JUDGE